UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARREN ENGLISH III,

               Petitioner,                       Hon. Janet T. Neff

v.                                         Case No. 1:09-CV-1012

MARY BERGHUIS,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on English's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that English's petition be **denied**.

## BACKGROUND

Following a jury trial, Petitioner was convicted of third degree criminal sexual conduct. (PageID.935-36). Petitioner was sentenced to serve twenty-one months to fifteen years in prison.[1] (PageID.970). Petitioner later moved for a new trial on the ground that two jurors failed to disclose during the jury selection process information that "would have led to those jurors either being challenged for cause, or alternatively peremptorily challenged." (PageID.1042-56). Petitioner

_____

[1] Petitioner has since been released from prison.

discovered this conduct after the conclusion of his trial.  *People v. English*, 2007 WL 4245412 at *1 (Mich. Ct. App., Dec. 4, 2007).

Specifically, Petitioner asserted that one juror (Juror A) failed to reveal during voir dire that she had been the victim of sexual abuse.  (PageID.1049).  Petitioner further asserted that another juror (Juror B) failed to disclose that Petitioner's father, an insurance agent, was responsible for cancelling his auto insurance following a hit and run accident.  (PageID.1053-54).  The trial judge granted Petitioner's motion for a new trial, finding that Juror A's conduct deprived Petitioner of the right to a fair and impartial jury.  (PageID.1067-72, 1409).  With respect to Juror B's conduct, the trial judge found that such did not violate Petitioner's rights.  (PageID.1071-72).

The prosecution appealed the matter to the Michigan Court of Appeals which reversed the trial court's finding that Petitioner was entitled to a new trial.  *English*, 2007 WL 4245412 at *1-3.  Specifically, the court found that the trial judge, in resolving Petitioner's motion for new trial, had erroneously concluded that "a victim of sexual abuse should automatically be excused from sitting on a criminal sexual conduct jury."  *Id.* at *1-2.  The court articulated the appropriate legal standard:

> when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause.

*Id.* at *2.

Applying the appropriate standard to the facts in this matter, the court of appeals concluded:

> In the case at bar, defendant makes no showing that he was prejudiced by the presence of the challenged juror nor did the trial

2

court make any such finding of prejudice. Rather, the trial court made a finding regarding the second prong, that the juror was properly excusable for cause. But the only basis for that finding was that all victims of sexual abuse would have been excused for cause, even if the trial court had to do so sua sponte. We find no basis in law for such an "automatic exclusion" rule. In this respect, we agree with the observations of Judge O'Connell in *People v. Johnson,* 245 Mich.App 243, 257 n 5; 631 NW2d 1 (2001), that "jurors with real life experiences, who acknowledge that they can be free of bias and prejudice, can and do make excellent jurors" and that "we will not presume that the juror's [past victimization] precluded her from rendering a fair and impartial verdict."

Indeed, we find it particularly disturbing that the trial court apparently casts a wide net and excludes all CSC victims from serving on juries where CSC is charged even where, as here, there is little similarity between the nature of the offense against the potential juror and that with which defendant is charged. Certainly a trial judge must be concerned with the potential bias of any potential juror who was the victim of a crime. And that concern is heightened as the facts of the juror's case come closer to the facts of the case to be tried. But that does not justify a policy of automatically excluding any juror who has been the victim of a crime or even of automatically excluding any juror who was the victim of a similar crime as that charged.

Because the trial court did not identify any proper basis for excluding the juror for cause, it erred in granting defendant's motion for new trial. Accordingly, we set aside the trial court's order granting a new trial and reinstate defendant's conviction and sentence.

*Id.* at *3.

Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. English*, Case No. 135519, Order (Mich., Feb. 6, 2008). Petitioner subsequently moved in the trial court for relief from judgment. (PageID.1665-66). In denying Petitioner's motion, the trial court observed:

All of these arguments were made to and disregarded by the Court of Appeals and Supreme Court. They also did not find it necessary to remand the issue to the trial court for further fact findings or rulings.

3

> I do not have to agree with the reasoning of the appellate courts but
> I do have to follow their rulings.

(PageID.1666).

Arguing that his due process rights were violated by the trial court's refusal to "revisit his new trial motion," Petitioner unsuccessfully appealed this matter to the Michigan Court of Appeals and the Michigan Supreme Court.  (PageID.1615, 1667).  On November 4, 2009, Petitioner initiated the present action in this Court asserting two claims:

> I.  The Petitioner was denied his Constitution rights under the federal and Michigan constitutions to a trial by impartial jury when a juror, in a criminal prosecution for criminal sexual conduct, failed to reveal her past sexual history and when that juror would have been excused had that past history been disclosed and when a second juror failed to reveal facts that would have supported a for-cause challenge for bias.
>
> II.  The Petitioner's due process rights under the 5th and 14th Amendments were violated when the trial judge was precluded from re-considering the new trial motion using the principles mandated by the court of appeals.

On December 21, 2009, the Honorable Janet T. Neff, instead of ordering that the petition be served on Respondent, dismissed English's petition and denied him a certificate of appealability.  (ECF No.5-6).  The Court dismissed English's petition on the ground that "it fails to raise a meritorious federal claim." (PageID.494).  Petitioner appealed this matter to the Sixth Circuit which granted Petitioner a certificate of appealability "only as to the fair and impartial juror issue." *English v. Berghuis*, 529 Fed. Appx. 734, 739 (6th Cir., July 10, 2013).

The Sixth Circuit remanded the matter to this Court, but not because it disagreed with the conclusion that English's petition failed to state a claim.  Instead, the Court questioned whether

4

it was appropriate, in dismissing English's petition, to apply the deferential standard articulated by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Id.* at 740-45.  As the court observed, the deferential standard articulated by AEDPA only applies as to those claims which were actually adjudicated by the state courts.  *Id.* at 740.  In this respect, the court questioned whether Petitioner's fair and impartial juror claim presented in this Court had actually been adjudicated by the state courts.  *Id.* at 740-45.  Accordingly, the court concluded:

> Since AEDPA's deferential standard of review applies only to claims that were adjudicated on the merits in state court proceedings, we conclude that the district court's deference to the Michigan courts was an improper basis for denying English's habeas petition without the requisite determination that his federal claim had been adjudicated on the merits.  We further conclude that, given the complex procedural, evidentiary, and constitutional questions raised by the petition, it was an inappropriate candidate for summary dismissal under Rule 4, without full briefing by the parties and without the benefit of the entire state court record.

> We must, therefore, return the matter to the district court for a determination of the adjudication question, applying the *Richter/Williams* rebuttable presumption.  The court's further proceedings should be based upon full briefing by the parties and a review of the complete state court record.  On this basis, if the court determines that the presumption of adjudication is rebutted, it must conduct *de novo* consideration of the merits of English's Sixth Amendment claim regarding the misconduct of Juror A.  If the court should determine that the presumption is not rebutted and AEDPA deference is warranted, the court must still evaluate English's Sixth Amendment claim through the AEDPA lens, applying the *McDonough* test to determine whether English was denied his Sixth Amendment right to be tried by a fair and impartial jury, as that right is elucidated by Supreme Court precedent.

*Id.* at 745.

5

## STANDARD OF REVIEW

English's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999).  The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.  Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context."  *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308.  Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where

8

state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.        Fair and Impartial Jury Claim

The Sixth Circuit remanded the matter for a determination as to whether Petitioner's fair and impartial juror claim was actually adjudicated by the state courts.  As the Sixth Circuit articulated, resolution of this question is particularly difficult.  After reviewing the record as well as the parties' respective pleadings, the Court finds it unnecessary to resolve the "actual adjudication" question because resolution of such does not alter the result.  *See, e.g., Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) (recognizing that a habeas court need not address "complicated" procedural issues which are "unnecessary to the disposition of the case").  Whether Petitioner's claim was actually adjudicated by the state court is not relevant because under both the deferential AEDPA standard or a de novo review standard, Petitioner's claim that he was denied the right to a fair and impartial jury is without merit.

####        A.        Legal Standard

The standard applicable to Petitioner's fair and impartial juror claim was articulated by the Sixth Circuit:

> The Sixth Amendment, applicable to the states through the
> Fourteenth Amendment, provides that "[i]n all criminal prosecutions,

9

the accused shall enjoy the right to a speedy and public trial, by an impartial jury....” U.S. CONST. amend. VI. In *McDonough Power Equipment, Inc. v. Greenwood,* the Supreme Court recognized that the jury selection process “serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors,” and that the “necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.”  464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).  “The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.” *Id.* at 555, 104 S.Ct. 845.

Declaring that a litigant is “entitled to a fair trial but not a perfect one,” *id.* at 553, 104 S.Ct. 845, the *McDonough* Court held that a defendant who discovers that a juror has withheld material information is entitled to a new trial only if the juror’s failure to disclose denied the defendant his right to an impartial jury.  *Id.* at 556, 104 S.Ct. 845.  In order to obtain a new trial based on a juror’s non-disclosure during *voir dire,* the defendant “must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause.”  *Id.*

Challenges for cause allow the removal of panel members only “on a narrowly specified, provable and legally cognizable basis of partiality,” *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *overruled on separate grounds by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), “such as a personal relationship with a party, witness, or attorney in the litigation, or a biased state of mind concerning a party or issue in the case.”  *United States v. Annigoni,* 96 F.3d 1132, 1138 (9th Cir.1996), *overruled on separate grounds by Rivera v. Illinois,* 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009).  A finding of bias is thus central to the *McDonough* test: “Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause.”  *McDonough,* 464 U.S. at 554, 104 S.Ct. 845.

The *McDonough* standard applies in cases where a juror deliberately conceals information as well as in cases of “mistaken but honest” responses to *voir dire* questions.  *Id.* at 555, 104 S.Ct. 845.  Only when a juror is found to have deliberately concealed material information, however, may bias be inferred.  If information is not concealed deliberately, “the movant must show actual bias.”  *See, e.g., Zerka v. Green,* 49 F.3d 1181, 1186 (6th Cir.1995) (emphasis

10

omitted).  "Actual bias is 'bias in fact' and focuses on the record at voir dire." *Johnson v. Luoma,* 425 F.3d 318, 326 (6th Cir.2005).

*English*, 529 Fed. Appx. at 739-40.


B.      Juror A's Voir Dire Statements and Subsequent Testimony

The trial judge began the jury selection process by selecting as potential jurors fourteen members of the jury venire.  (PageID.614).  Juror A, D-Ann Armstrong, was not part of this initial group.  (PageID.614).  The judge asked this initial group several preliminary questions, but the Court notes that the judge did not initially ask whether any of the potential jurors had been a victim of a crime or sexually assaulted.  (PageID.614-52).  It was not until several jurors had been excused that the trial judge first asked a potential juror whether he had ever been the victim of a crime.  (PageID.652).  The judge later asked a potential juror whether she had any "personal experiences that would prevent [her] from being a fair and impartial juror."  (PageID.685).  The judge later asked another man whether he had "any personal experience either as a victim or as a witness. . ."  (PageID.696).  Neither of the attorneys asked the jurors if they had been the victim of a crime or sexually assaulted.  (PageID.661-708).

Juror A, D-Ann Armstrong, was the last person selected for the jury.  The relevant part of the proceedings were as follows:

CLERK:              14, D-Ann Armstrong.

COURT:              Good morning, ma'am.

ARMSTRONG:      Morning.

COURT:              You've heard all the questions that were asked?

ARMSTRONG:      Yes.

11

COURT:              Would you have answered them differently?

ARMSTRONG:          Maybe a couple.

COURT:              Okay. Is there something you want to talk about outside the presence of -

ARMSTRONG:          No, that's fine.

COURT:              Which one?

ARMSTRONG:          I was a victim of a crime, a break-in.  And then my brother-in-law is a police officer for the Village of White Pigeon.

COURT:              Who is your brother-in-law?

ARMSTRONG:          Mike Nixon.

COURT:              Okay.   Let's deal with the first one, the one regarding yourself being a victim of a crime.  That was a breaking and entering? Yes?

ARMSTORNG:          Yes.

COURT:              How long ago was that?

ARMSTRONG:          11 years ago.

COURT:              All right.  Were you satisfied with the outcome of that case?

ARMSTRONG:          Yeah, yes.

COURT:              Is that going to prevent you from sitting and hearing a case involving the allegations as they've been laid out by the attorneys?

ARMSTRONG:          No, sir.

COURT:              In regards to your - what - what's the relation to Mr. Nixon?

ARMSTRONG:          Brother-in-law.

COURT:              Brother-in-law.  Are you going to be able to listen to the testimony of any witness that's a police officer and give the

12

|  |  |
|---|---|
|  | same weight - |
| ARMSTRONG: | Yes. |
| COURT: | - as any other witness? |
| ARMSTRONG: | Yes. |
| COURT: | All right.  So you are - and Mr. Nixon is not involved in this case at all.  So it would just be - just be - well, he's not.  I'm telling you. |
| ARMSTRONG: | Okay. |
| COURT: | But just knowing him, you don't have any preconceived ideas about police officers or - or anything like that? |
| ARMSTRONG: | No, sir. |
| COURT: | All right.  Anything else that you can think of? |
| ARMSTRONG: | No, sir. |
| COURT: | All right.  Go ahead and take a seat.  Ms. Curtis, any questions? |
| CURTIS: | I noticed on your juror questionnaire you indicated that there was a serious traffic accident involving alcohol.  Does that accident and the alcohol component of that, although it's a different type of case, would it affect your ability to sit as a juror in this case? |
| ARMSTRONG: | No. |
| CURTIS: | And with regard to the - the B and E that you were a victim of, did anything happen with that case that would have caused you to have a problem with the courts or the prosecutor's office? |
| ARMSTRONG: | No. |
| CURTIS: | I have nothing further. |
| COURT: | Mr. Fette? |

13

FETTE:          Um, Ms. Armstrong you said you have one child; is that correct?

ARMSTRONG:      I have two.

FETTE:          Two?  Okay.  How old are they?

ARMSTRONG:      22 and 19.

FETTE:          Are any of them living at home?

ARMSTRONG:      The 19-year-old.

FETTE:          Okay.  Boys or girls.

ARMSTRONG:      Boy.

FETTE:          Okay.  Both of them?

ARMSTRONG:      No, the oldest is a girl.

FETTE:          Okay.  The boy is living at home?

ARMSTRONG:      Yes.

FETTE:          The girl is on her own?

ARMSTRONG:      Yes.

FETTE:          Did you understand my questions regarding the presumption of innocence and the burden of proof?

ARMSTRONG:      Yes, sir.

FETTE:          And you will follow the judge's instructions; is that correct?

ARMSTRONG:      Yes, sir.

FETTE:          I have nothing further, your Honor.

COURT:          Challenge for cause on Ms. Armstrong?

CURTIS:         No, your Honor.

14

| COURT: | Mr. Fette? |
|---|---|
| FETTE: | No, your Honor. |
| COURT: | All right.  Then we go back to preemptories (sic).  They're back with the State. |
| CURTIS: | The People are satisfied with the jury. |
| FETTE: | Can I have one moment, your Honor? |
| COURT: | Sure. |
| FETTE: | We have a jury, your Honor. |
| COURT: | Great.  Thank you. |

(PageID.708-12).

On September 29, 2006, Armstrong was a witness at a hearing concerning Petitioner's motion for new trial.  Armstrong testified that when she was eight years of age she had been the victim of a sexual assault.  (PageID.989, 993).  Armstrong testified that it was not reported to the police.  (PageID.993).  Armstrong acknowledged that she did not disclose this during the void dire process at Petitioner's trial.  (PageID.989).  When pressed why she did not reveal this fact, Armstrong stated:

> I - I don't - why - it's hard to explain this.  What had happened to me years ago happened to me years ago and I don't have a problem with it.  I don't - never even thought for a minute anything was comparable.  No one was prosecuted.  I didn't talk to the police.  I didn't talk to anybody.  My father and I reconciled about this many, many, many years ago and I'm fine with this fact.

(PageID.987-88).

Later in the hearing, the following exchange occurred between Armstrong and the prosecuting attorney:

15

Q:     Mrs. Armstrong, I did interview you this morning.  Based upon that interview and the fact that you've been interviewed by Jim Bidell, was your nondisclosure to the Court about your being sexually assaulted, were you trying to hide anything from the Court?

A:     No, not - no.

Q:     Did you actually, when you talked to Jim Bidell think that you had actually disclosed that to the Court?

A:     Yes, I did.

Q:     Looking back at it, were you nervous the day of the jury trial?

A:     Yes, yes.

Q:     Thinking about it now in terms of now knowing that there was this nondisclosure, were you mistaken about what you believe you had filled the Court in on?

A:     Yes.

Q:     Was there any reason why you would have tried to hide that from the Court or the attorneys?

A:     No.

Q:     Did your prior victimization in any way create a bias for you or a problem with you in evaluating the case against Warren English III?

A:     No.

(PageID.990).

A subsequent exchange between Armstrong and the prosecuting attorney was as follows:

Q:     Now that you've had time to reflect after you've been interviewed by Jim Bidell, have you thought about in your mind why you may not have provided this information to the Court?

A:     Yes.

16

Q:    And what is that reason?

A:    I believe that - I thought that there would have to be a conviction or that I would have had to went to the police or the authorities to report this.

Q:    So in - if I understand you correctly, in your mind there was no legal case and, therefore, you didn't consider yourself -

A:    Yes.

Q:    - to be a victim in a criminal sense?

A:    Exactly.

Q:    And is that in your way of kind of trying to figure out why this may have happened?

A:    Yes.

Q:    But looking back at it, did you still truly think you had let the Court know?

A:    Yes.

(PageID.991-92).

Finally, the prosecutor asked Armstrong, "did your history, did your victimization when you went into this trial weigh on your mind in terms of being able to fairly evaluate and sit and listen to the evidence in the Warren English III case?" to which Armstrong responded, "not once." (PageID.994).

17

C.      Trial Court's Ruling on Petitioner's Motion for New Trial

On December 8, 2006, the trial judge conducted oral argument on Petitioner's motion for new trial.  After listening to argument, the judge concluded that given Armstrong's failure to reveal that she had been sexually assaulted as a child, Petitioner's right to a fair and impartial jury had been violated and he was, therefore, entitled to a new trial.  (PageID.1067).

In support of his conclusion, the judge made the following findings: (1) Armstrong made a "material omission"; (2) Armstrong "knew it was important information for the Court and she honestly thought that she had told the Court that she had been a prior victim of a criminal sexual conduct - a sexual assault by her father"; (3) while Armstrong was "convinced that she was fair and impartial in this case," such was not relevant.  (PageID.1067-69).  The judge also made reference to "an article in the ABA Journal" which asserted that some people "actually intentionally failed to disclose material [information] because they have an agenda."  (PageID.1070).  The judge expressly stated, however, that "I do not believe [that] to be the case here."  (PageID.1070).  Importantly, the trial judge did not find that Armstrong had been untruthful or that she deliberately withheld the information in question.  The trial judge did not dispute Armstrong's assertion that she had been fair and impartial nor did he find that Armstrong had been incapable of serving impartially.  The trial judge likewise did not find that Petitioner had been prejudiced by Armstrong's participation as a juror.

As previously noted, the trial judge granted Petitioner's motion based on the erroneous belief that Petitioner did not have to establish that he suffered prejudice as a result of Armstrong's conduct.  Rather, the trial judge concluded that Armstrong's status as a victim of sexual assault disqualified her from serving as a juror and, thus, her service as a juror deprived Petitioner

18

of his right to a fair and impartial jury.  As also noted above, the Michigan Court of Appeals reversed the trial judge's ruling expressly rejecting the judge's rationale that any victim of sexual abuse would have automatically been excused for cause.

### D.    Application of the *McDonough* Standard

As discussed above, the Court, applying the deferential AEDPA standard, previously dismissed English's petition.  The Sixth Circuit did not take issue with the Court's conclusion, but instead merely questioned whether it was appropriate for the Court to apply the deferential AEDPA standard.  The undersigned concludes that it does not matter whether Petitioner's claim is assessed pursuant to the deferential AEDPA standard or a de novo standard because under either standard, Petitioner's claim is without merit.  To the extent that the deferential AEDPA standard applies to Petitioner's claim, the undersigned incorporates the rationale and analysis previously articulated by the Honorable Janet T. Neff.  (ECF No.5).  To the extent that Petitioner's claim is to be analyzed under a de novo standard, the Court recommends the following.

As noted above, to prevail on his claim that he was denied the right to a fair and impartial jury, Petitioner must establish that Armstrong "failed to answer honestly a material question on *voir dire*, and then further show that the correct response would have provided a valid basis for a challenge for cause."  *English*, 529 Fed. Appx. at 739.

As noted above, the trial judge only once asked a potential juror if he had been the victim of a crime.  Moreover, the judge did not ask this question until the jury selection process was well underway.  Thus, it is not accurate to characterize this particular question as once which was posed to every potential juror from the outset of the voir dire process.  Likewise, neither the judge

19

nor the attorneys ever asked any potential juror whether she had been the victim of a sexual assault. The point being that while Armstrong admittedly did not reveal her status as a sexual assault victim, it is not clear from the record that she could fairly or reasonably have been expected to understand that her status as a victim was a matter which she was required to reveal.  Nevertheless, Armstrong apparently believed she had such an obligation having revealed that she had been the victim of a burglary.  Thus, her failure to likewise reveal her status as a sexual assault victim constituted a failure to honestly answer a material question during voir dire.  Petitioner cannot, however, satisfy the second prong of the analysis.

Having satisfied the first prong of the analysis, Petitioner must also establish that had Armstrong provided the information in question such "would have provided a *valid* basis for a challenge for cause."  *English*, 529 Fed. Appx. at 739 (emphasis added).  As the *English* court further noted, "[a] finding of bias is thus central to the *McDonough* test. . .[i]f information is not concealed deliberately, the movant must show actual bias."  *Id.* at 739-40.  Petitioner argues that he does not have to prove actual bias, but can instead prevail on the ground that prejudice or bias is properly inferred under the circumstances.  The Court disagrees.

As the Sixth Circuit observed, "[o]nly when a juror is found to have deliberately concealed material information, however, may bias be inferred."  *English*, 529 Fed. Appx. at 740. The trial judge did not find that Armstrong deliberately concealed her status as a victim.  To the contrary, the judge expressly found that Armstrong "honestly thought that she had told the Court that she had been a prior victim of a criminal sexual conduct."  Because there is no evidence to support the contention that Armstrong deliberately withheld the information in question, Petitioner "must

show actual bias."[2]  *Id.*  The record does not support a finding that Petitioner suffered actual bias or prejudice as a result of Armstrong's participation as a juror in this matter.

Armstrong testified that her status as a victim absolutely did not weigh on her mind or impact her ability to weigh the evidence fairly.  The trial judge did not dispute or take issue with this assertion or Armstrong's related assertion that she had been "fair and impartial."  Likewise, the trial judge did not find that Armstrong had otherwise been untruthful.  While it might be plausible to question Armstrong's ability to be fair and impartial if the facts and circumstances of her sexual assault closely mirrored those presented in Petitioner's case, such is not the case.  Armstrong was assaulted as a child, many years before, by an older family member.  On the other hand, Petitioner, who was 20 years of age at the time, "raped a seventeen-year-old acquaintance while she slept." *English*, 2007 WL 4245412 at *2.  Petitioner's argument of bias and prejudice is based on a belief that no victim of sexual assault can ever fairly and impartially serve on a jury resolving a charge of sexual assault.  Petitioner has identified no authority for such a position.

As discussed herein, Petitioner has failed to demonstrate that he was prejudiced or biased by Armstrong's participation as a juror in this matter.  The Court agrees with the Michigan Court of Appeals which concluded that Petitioner "makes no showing that he was prejudiced by the presence of the challenged juror nor did the trial court make any such finding of prejudice." *English*, 2007 WL 4245412 at *3.  Accordingly, the Court rejects Petitioner's claim that his right to a fair and

---

[2] The Court notes that even if the "implied bias" standard applied, Petitioner's claim would still fail.  A finding of implied bias is appropriate only "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Louma*, 425 F.3d at 326.  Examples of circumstances that might satisfy this standard are "that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.*  The present circumstance in no way even approaches such extreme examples.

impartial jury was violated.

## II.          Due Process Claim

As discussed above, the Michigan Court of Appeals determined that the trial court, in resolving Petitioner's motion for new trial had applied the incorrect legal standard. The appellate court did not remand the matter to the trial court for evaluation of Petitioner's motion pursuant to the appropriate standard, but instead simply concluded that Petitioner's claim was without merit and rejected Petitioner's motion for new trial. Petitioner asserts that the failure by the Michigan Court of Appeals to remand the matter to the trial court for reconsideration of his motion for new trial violated his constitutional right to due process. This claim was rejected by Judge Neff. The Sixth Circuit did not grant a certificate of appealability as to this claim. Thus, the Court's previous rejection of this claim is still in effect.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that English's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 2, 2016                              /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge